**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Criminal Action No. 23-cr-00302-NYW-2

UNITED STATES OF AMERICA,

      Plaintiff,

v.

2.    MICHAEL VERGATO,

      Defendant.

---

**ORDER ON MOTION TO EXCLUDE AND TRIAL BRIEF ISSUES**

---

This matter is before the Court on the Government's Motion to Exclude Expert Testimony (the "Motion" or "Motion to Exclude"). [Doc. 110]. Defendant Michael Vergato ("Defendant" or "Mr. Vergato") opposes the Motion. [Doc. 122]. For the reasons below, the Motion to Exclude is respectfully **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

On June 20, 2023, Mr. Vergato was charged with wire fraud, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1343 and 2. [Doc. 1]. His co-Defendant, Mark Perlstein ("Mr. Perlstein"), was charged with the same six counts. *See* [*id.*]. The Court assumes the Parties' familiarity with the allegations underlying the charges and does not repeat them here.

Mr. Vergato is set for a seven-day jury trial beginning May 19, 2025. [Doc. 28 at 5]. He intends to call Daniel Grosdidier ("Mr. Grosdidier"), a certified public accountant, to testify as an expert about certain matters in the realm of forensic accounting. *See*

[Doc. 110-1 at 7; Doc. 110-2 at 1]. The Government filed its Motion to Exclude on May 2, 2025, asking the Court to "exercise its gatekeeping authority and preclude Mr. Grosdidier's impermissible expert testimony." [Doc. 110 at 1]. Defendant responded in opposition on May 12, 2025. [Doc. 122]. The Court has reviewed the Parties' briefs; Mr. Grosdidier's report dated April 28, 2025 (the "Original Report"), [Doc. 110-1]; an "Update to Prior Report" dated May 12, 2025 (the "Updated Report"), [Doc. 122-1]; and Mr. Grosdidier's curriculum vitae, [Doc. 110-2].

## LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "In essence, Rule 702 permits a court to admit expert testimony that is 'both reliable and relevant.'" *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)). The party proffering expert testimony has the burden to show its admissibility by a preponderance of the evidence. *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011).

Trial courts are charged with the responsibility of acting as gatekeepers to ensure that expert testimony is reliable and relevant. *See Kumho Tire Co. v. Carmichael*, 526

U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993).  To fulfill that function, the court first analyzes whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render their opinions. Fed. R. Evid. 702; *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 770 (10th Cir. 2019).  If the expert is qualified, the court must determine whether the expert's opinions are reliable by evaluating the underlying reasoning and methodology.  *Bill Barrett Corp.*, 918 F.3d at 770.  The court must also decide whether the expert's opinions are "applicable to a particular set of facts," i.e., are relevant to the case at hand.  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003).  This inquiry "encompasses Rule 702's requirement that the evidence help the trier of fact to understand the evidence or to determine a fact in issue."  *Sanderson*, 976 F.3d at 1172 (cleaned up).

## ANALYSIS

The Government moves to exclude the following opinions from Mr. Grosdidier:

- Datavail's ineffective, if any, internal controls allowed Mr. Perlstein full control over Datavail vendor/invoice approval, expense reimbursements, payroll – which Mr. Vergato would have had no knowledge of nor ability to control.

- No evidence Mr. Vergato knowingly participated in any fraud scheme.

- No evidence Mr. Vergato orchestrated any parts of the alleged scheme.

- No evidence Mr. Vergato knew Mr. Perlstein received any money paid from OPTO.

- No evidence Arrow had any involvement in the OPTO services nor was charged any of its invoices.

[Doc. 110 at 4 (quoting [Doc. 110-1 at 7])].  The Government argues that these opinions should be excluded because (1) Mr. Grosdidier is not qualified to offer them; (2) Mr. Grosdidier's methodology and conclusions are not reliable; (3) some of the opinions

violate Rule 704(b); (4) the opinions are impermissible "vouching" opinions and would not help the jury in its fact-finding task; and (5) the probative value of the opinions is outweighed by the danger of unfair prejudice, confusing or misleading the jury, and needlessly extending the trial. [*Id.* at 4–15]. Mr. Vergato disagrees, arguing that Mr. Grosdidier's opinions are admissible under Rule 702 and *Daubert*. *See* [Doc. 122]. The Court addresses the Parties' arguments on an opinion-by-opinion basis below.

## I.   Opinions About What Mr. Vergato "Knew" or Whether He "Knowingly" Participated in the Alleged Scheme

Four of the challenged opinions speak on what Mr. Vergato knew about the alleged scheme or whether he participated in the alleged scheme "knowingly":

- Mr. Vergato would have had no knowledge of [Datavail's vendor/invoice approval, expense reimbursements, and payroll].

- No evidence Mr. Vergato knowingly participated in any fraud scheme.

- No evidence Mr. Vergato orchestrated any parts of the alleged scheme.[1]

- No evidence Mr. Vergato knew Mr. Perlstein received any money paid from OPTO.

[Doc. 110-1 at 7 (footnote added)]. The Government argues, inter alia, that (1) Mr. Grosdidier is not qualified to offer these opinions; (2) the opinions are not reliable; (3) the opinions are not actually expert opinions subject to Rule 702 but are instead factual

---

[1] In his Updated Report, Mr. Grosdidier opines that there is "[n]o documentary evidence showing that Mr. Vergato orchestrated any parts of the alleged scheme, which is uncommon and unusual if he knowingly participated because oftentimes (and more often than not) documents can be identified establishing directly or circumstantially an individual's knowing participation in the alleged fraud." [Doc. 122-1 at 3]. Because Mr. Grosdidier's opinion about whether there is evidence showing that Mr. Vergato "orchestrated" the scheme is directly tied—by Mr. Grosdidier—to his opinion that there is no evidence that Mr. Vergato knowingly participated in the scheme, the Court construes this opinion as bearing directly on Mr. Vergato's knowledge or mental state.

conclusions that should be reserved for the jury's determination; and (4) these opinions violate Rule 704 of the Federal Rules of Evidence.  [Doc. 110 at 4–12].  In his Response, Mr. Vergato asserts that "[t]he government's arguments regarding Mr. Vergato's mental state are moot because the defense was not and will not be eliciting opinions on that subject from Mr. Grosdidier."  [Doc. 122 at 1 n.1].  However, despite defense counsel's representation that he does not intend to elicit opinions about Mr. Vergato's mental state, Mr. Grosdidier continues to make statements in his Updated Report—dated May 12, 2025—that bear on Mr. Vergato's mental state with respect to the charged offense and underlying alleged scheme.  *See* [Doc. 122-1 at 2–3].  Accordingly, in an abundance of caution, the Court addresses the Government's arguments and finds that these opinions must be excluded under Rule 702 and Rule 704.

### A.    Reliability

The Court's gatekeeper role functions to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quotation omitted).  "Under Rule 702, where the expert testimony is non-scientific, 'reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it.'"  *United States v. Medina*, No. 23-cr-00049-PAB-3, 2025 WL 873022, at *3 (D. Colo. Mar. 20, 2025) (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)).

The Government argues that Mr. Grosdidier's opinions are unreliable because, among other reasons, (1) his opinions are based on "cherry-pick[ed]" evidence from the Government's discovery; and (2) his opinions are not based on any ascertainable, reliable method.  [Doc. 110 at 6–10].  Mr. Vergato disagrees, raising several arguments asserting

that Mr. Grosdidier's opinions are reliable. [Doc. 122 at 4–6]. For a few reasons, the Court finds the Government's arguments more persuasive.

As a preliminary matter, the Court respectfully disagrees with Defendant's assertion that the Government's arguments go to the weight of Mr. Grosdidier's opinions and not their admissibility. *See* [*id.* at 5]. The 2023 amendments to Rule 702 "sought to clarify that it is erroneous for courts to deem 'critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology' as questions of weight instead of admissibility." *Crystal Lagoons U.S. Corp. v. Desert Color Manager*, No. 2:20-cv-00851-RJS-DAO, 2025 WL 384960, at *3 (D. Utah Feb. 4, 2025) (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendment). As the Advisory Committee's notes explain:

> Some challenges to expert testimony will raise matters of weight rather than admissibility even under the Rule 104(a) standard . . . . But this does not mean, as certain courts have held, that arguments about the sufficiency of an expert's basis always go to weight and not admissibility. Rather it means that once the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence.

Fed. R. Evid. 702 advisory committee's note to 2023 amendment. Accordingly, the Government's arguments *do* bear on the admissibility of Mr. Grosdidier's opinions, and the Court must determine whether Mr. Vergato has shown that the opinions are reliable.

With respect to Mr. Grosdidier's sources, the Government observes that while Mr. Grosdidier lists categories of evidence he reviewed in fashioning his opinions, *see* [Doc. 110 at 7 n.1]; *see also* [Doc. 110-1 at 5], he does not mention that he spoke with Mr. Vergato "despite repeatedly citing the defendant's recollections throughout his report," [Doc. 110 at 7 n.1]. The Government reasons that because Mr. Grosdidier has not

provided an accurate list of the sources considered in forming his opinions, "it is impossible to assess the sufficiency of the information he was given access to or his methodology in considering such evidence." [*Id*.]. Defendant responds that "there is no authority rigidly requiring that an expert review all relevant information in a case in order to have his or her testimony admitted into evidence," and "[f]ailing to review all relevant evidence is not grounds for excluding Mr. Grosdidier's testimony; rather, it provides subject matter for cross-examination." [Doc. 122 at 4–5]. He also asserts that, regardless, "Mr. Grosdidier has reviewed all relevant evidence in formulating his opinions." [*Id*. at 5].

The Court respectfully disagrees with Defendant. If Mr. Grosdidier did not review all of the evidence in this case, then he cannot reliably opine that there is "[n]o evidence" of Mr. Vergato's knowledge of or involvement in the alleged scheme.[2] *See United States v. Pena*, No. 1:23-cr-00748-KWR, 2024 WL 4189300, at *4 (D.N.M. Sept. 13, 2024) ("Because [the expert] has not reviewed all evidence in the record, he may not opine that there is 'no evidence' that the firearm was fired at a dwelling, as such opinion is not based on sufficient facts or data."). Indeed, any such opinion is necessarily speculative in that it assumes what the unreviewed evidence would or would not show. While the Court appreciates Mr. Grosdidier providing more detail about the documents he reviewed in this

---

[2] Notably, Mr. Grosdidier does not discuss what type of evidence he would expect to show Mr. Vergato's knowledge of a scheme to defraud, explain why that evidence would necessarily be present if Mr. Vergato had such knowledge, or explain why the fact that such evidence is missing supports his conclusion that there is no evidence of Mr. Vergato's knowledge or participation in any conduct with Mr. Perlstein; rather, he simply asserts in conclusory fashion that there is no such evidence, and that he would "expect to see documentation that clearly indicates Mr. Vergato's knowing involvement in any acts as a co-conspirator." [Doc. 122-1 at 2].

case in his Updated Report, *see* [Doc. 122-1 at 2–3], it is still unclear whether he reviewed *all* of the relevant evidence in this case prior to forming his opinions. And Defendant's cursory statement that Mr. Grosdidier "has reviewed all relevant evidence in formulating his opinions," [Doc. 122 at 5], is insufficient to convince the Court by a preponderance of the evidence that Mr. Grosdidier's opinions are reliable, *Squires*, 829 F. Supp. 2d at 1048.

Moreover, an expert relying solely or primarily on his experience in forming his opinions "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee's note to 2000 amendments). While Mr. Vergato argues that Mr. Grosdidier's methodology is reliable because the opinions are "based on his training and experience in regularly reviewing voluminous financial statements and identifying documents and information in performing investigative accounting exercises, including fraud examination and business irregularities indicative of fraud," [Doc. 122 at 5], neither Mr. Vergato nor Mr. Grosdidier explain how his experience in forensic accounting permits him to reliably opine about whether there is evidence of knowing fraud *in the criminal context*, which is particularly notable since Mr. Grosdidier's curriculum vitae and case testimony history do not reflect any particularized experience in testifying in criminal cases, *see* [Doc. 110-2]. For these reasons, the Court cannot conclude that Mr. Grosdidier's opinions about Mr. Vergato's mental state or knowledge are reliable.

### B.    Helpfulness

The Government also argues that Mr. Grosdidier's opinions will not assist the trier of fact, as required under Rule 702.  [Doc. 110 at 12].  It asserts that Mr. Grosdidier's testimony would be nothing more than summarizing the evidence and drawing his own conclusions—thereby usurping the jury's fact-finding role—and that the jury is just as qualified to analyze the evidence and draw factual conclusions therefrom.  [*Id.* at 13].

Defendant disagrees; he argues that the opinions rely on "accounting principles of revenue, materiality and the conduct of audits which are not the type of knowledge the average juror would have possession of." [Doc. 122 at 7].  He argues that Mr. Grosdidier's opinions will "assist[] the jury in understanding the large load of information they will be presented with at trial."  [*Id.* at 8].  He contends that Mr. Grosdidier's opinions "do not speak to whether fraud did or did not occur but instead what documents are present and what documents are not present related to his experience in fraud investigations and how that relates to the charges and allegations in this case."  [*Id.*].

"Simply because an opinion embraces an ultimate issue of fact does not preclude its admission."  *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1231 (D. Colo. 2008); Fed. R. Evid. 704(a).  But if "expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally assist the trier of fact."  *Sanderson*, 976 F.3d at 1173; *see also United States v. Garcia*, 793 F.3d 1194, 1212 (10th Cir. 2015) (if the jury is "every bit as qualified to analyze" the evidence, then "the expert provides no added value" (quotation omitted)).  "Courts routinely exclude expert testimony as to intent,

motive, or state of mind as impermissible." *Liberty Mut. Fire Ins. Co. v. Michael Baker Int'l, Inc.*, No. 2:19-cv-00881-JNP, 2022 WL 973079, at *11 (D. Utah Mar. 31, 2022).

While it could be helpful for an expert to explain what certain documents show or mean, or whether the documents themselves reflect Mr. Vergato's involvement in the alleged scheme (if such information would not be readily ascertained by a lay person's review of those documents), those are not the opinions challenged by the Government here. Indeed, Mr. Grosdidier's broadbrush statement that there is "no evidence" of Mr. Vergato's knowledge of Datavail's internal financial systems would not assist the jury because jurors are readily capable of—and expressly tasked with—deciding whether they have been presented with evidence of such knowledge. *Cf. United States v. Begay*, 310 F. Supp. 3d 1318, 1352 (D.N.M. 2018) ("While the Court concludes that Dr. Leo's general testimony regarding police interrogation tactics is helpful, a trier of fact is capable of discerning the extent to which the police interrogation tactics that Dr. Leo describes were used in this case."). Similarly, as to Mr. Grosdidier's statement that Mr. Vergato did not knowingly participate in any fraud scheme, whether the evidence does or does not support the required elements of the charged offenses is a task reserved for the jury. *Cf. United States v. Leveille*, No. 18-cr-02945-WJ, 2023 WL 5043875, at *3 (D.N.M. Aug. 8, 2023) ("A lay juror is fully capable of understanding and inferring Defendants' motives through direct evidence without the aid of expert testimony."). Indeed, at the Trial Preparation Conference on May 16, 2025, even defense counsel asked the Court to preclude witnesses from "giv[ing] opinions regarding fraud, defraud," asserting that "any . . . witness[] can say facts of what happened, but their determination as to whether fraud [occurred] or the company was defrauded or there was a conspiracy or things of that

nature, those are legal conclusions and opinions that are improper for these witnesses to say." [Hearing Tr. at 29:12–20].[3]

Finally, as framed, these opinions as to there being "no evidence" of Mr. Vergato's knowledge of or participation in a fraudulent scheme with Mr. Perlstein—regardless of whether those opinions rely on Mr. Vergato's hearsay statements or not—is improper credibility vouching, whether or not Mr. Vergato testifies. *See United States v. Charley*, 189 F.3d 1251, 1267 n.22 (10th Cir.1999) (explaining that "[t]he crucial factor that separates admissible opinion testimony from impermissible vouching is the basis upon which [the expert] forms his or her opinion."). The basis of Mr. Grosdidier's opinions is his review of documentary evidence about the financial controls and accounting in place at Datavail—but those documents simply cannot shed any light on whether Mr. Vergato's defense should be believed, which is firmly in the province of the jury. *United States v. Walker*, 85 F.4th 973, 985 (10th Cir. 2023).

### C.    Rule 704

Finally, Rule 704 provides that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704. This Rule "proscribes . . . expert opinions in a criminal case that are about a particular person ('the defendant') and a particular ultimate issue (whether the defendant has 'a mental state or condition' that is 'an element of the crime charged or of a defense')." *Diaz v. United States*, 602 U.S. 526, 534 (2024).

---

[3] The Court cites to a preliminary nonpublic version of the Trial Preparation Conference transcript. Accordingly, there may be some variations with respect to page numbers, line numbers, or specific language should an official transcript be ordered and prepared.

Rule 704 precludes an expert witness "from expressly stating the final conclusion or inference as to a defendant's mental state," but does not bar the expert "from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." *United States v. Archuleta*, 737 F.3d 1287, 1297 (10th Cir. 2013) (quotation omitted).

At least some of Mr. Grosdidier's opinions directly opine on Mr. Vergato's mental state with respect to an element of a charged offense. *E.g.*, *compare* [Doc. 122-1 at 2 ("No documentary evidence Mr. Vergato knowingly participated in any fraud scheme.")], *with* Tenth Circuit Criminal Pattern Jury Instruction § 2.57 ("To find the defendant guilty of [wire fraud] you must be convinced that the government has proved . . . beyond a reasonable doubt . . . [that] the defendant acted with specific intent to defraud."); *compare* [Doc. 122-1 at 3 ("No documentary evidence showing that Mr. Vergato knew Mr. Perlstein received any money paid from OPTO or participated in the process.")], *with* Tenth Circuit Criminal Pattern Jury Instruction § 2.06 ("To find the defendant guilty of [aiding and abetting wire fraud] you must be convinced that the government has proved . . . beyond a reasonable doubt . . . [that] the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about," i.e., "that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him."). Rule 704 expressly prohibits those opinions, and thus provides an additional basis to exclude these opinions.

For all of these reasons, the Motion to Exclude is **GRANTED** to the extent it seeks to exclude Mr. Grosdidier's opinions that (1) Mr. Vergato would have had no knowledge of Datavail's vendor/invoice approval, expense reimbursements, or payroll; (2) there is

"no evidence" that Mr. Vergato knowingly participated in the fraud scheme or orchestrated any parts of the alleged scheme; and (3) there is "no evidence" that Mr. Vergato knew that Mr. Perlstein received any money paid from OPTO.[4]

## II.    Opinion About Datavail's Internal Financial Operations

Mr. Grosdidier opines that "Datavail's ineffective, if any, internal controls allowed Mr. Perlstein full control over Datavail vendor/invoice approval, expense reimbursements, payroll" and that Mr. Vergato "would have had no . . . ability to control" those systems. [Doc. 110-1 at 7].[5]   The Government moves to exclude this opinion on grounds that Mr. Grosdidier is not qualified to render it and it is unreliable, in addition to moving for exclusion under Rule 403.  *See* [Doc. 110 at 4–7, 13].[6]

---

[4] Defendant states in his Response that "[t]o the extent the Court may have any remaining doubts, a *Daubert* hearing is necessary."  [Doc. 122 at 10].  However, district courts are "granted great latitude in deciding which factors to use in evaluating the reliability of expert testimony, and in deciding whether to hold a formal hearing," *Charley*, 189 F.3d at 1266, and courts are "not required to hold a pretrial *Daubert* hearing in order to make the[] determinations that Rule 702 requires," *United States v. Earls*, 129 F.4th 850, 862 (10th Cir. 2025).  If a defendant seeks an evidentiary hearing, "he [bears] the burden of requesting one."  *United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009).  Here, Defendant does not explain why a hearing is necessary or set forth what information he believes would be gleaned at a hearing that could not have been presented in his Response or Mr. Grosdidier's submissions.  *See* [Doc. 122].  Given the numerous bases for excluding these opinions, the Court concludes that a Daubert hearing would not assist the Court in its gatekeeping function or change its analysis.

[5] The Court has addressed and excluded the part of this opinion relating to Mr. Vergato's "knowledge of" Datavail's "vendor/invoice approval, expense reimbursements, [and] payroll," and does not address it again here.

[6] Though the Government raises other arguments challenging Mr. Grosdidier's opinions generally, the Court does not construe those arguments as reasonably directed at this specific opinion.  *See, e.g.*, [Doc. 110 at 7–9 (arguing that the opinions are impermissibly based on hearsay); *id.* at 11–12 (arguing for exclusion under Rule 704)].

A.    **Qualifications**

The Government does not challenge Mr. Grosdidier's qualifications to opine about "accounting analysis" or "his review of OPTO's accounting records or invoices." [*Id.* at 5 (emphasis omitted)].    But the Government argues that Mr. Grosdidier's opinions go beyond simple accounting analysis and amount to factual conclusions about ultimate issues in this case and contends that these conclusions are not tied to Mr. Grosdidier's accounting expertise.    [*Id.* at 5–6].    Mr. Vergato responds that the Government's arguments go to the weight of Mr. Grosdidier's opinions, not their admissibility.  [Doc. 122 at 2].  He reiterates Mr. Grosdidier's listed qualifications, [*id.* at 3], and argues that Mr. Grosdidier "provides an exhaustive list of his qualifications that leaves no room for questioning whether he possesses the qualifications required by *Daubert*," [*id.* at 4]. Specifically, Mr. Vergato asserts that Mr. Grosdidier's Updated Report "elaborates on his specific qualifications to provide his opinions," such as Mr. Grosdidier's statement that "[t]he processes and analysis completed in developing [his] opinions are what [he is] trained to perform, and the relevant documents are what [he is] trained to review and evaluate," and that "[f]orensic investigative accountants regularly review voluminous financial statements along with supporting documentation, records and approval processes, for the purpose of formulating opinions consistent with" those included in his Updated Report.  [*Id.* at 3–4 (quoting [Doc. 122-1 at 2])].

First, to the extent the Government suggests that Mr. Grosdidier "may theoretically be qualified to testify regarding his accounting analysis, such as his review of OPTO's accounting records or invoices," [Doc. 110 at 5 (emphasis omitted)], the Court concludes that *this specific* opinion is reasonably based on that sort of review of those kinds of

records.  In Mr. Grosdidier's Updated Report, he sets out the documents he reviewed to form this opinion, including invoices, statements of work, and internal emails within the Datavail accounting department.  [Doc. 122-1 at 2].

Even setting aside the Government's potential concession, the Court finds that Mr. Grosdidier is qualified to offer this opinion.  Mr. Grosdidier has approximately 13 years' experience working as a certified public accountant, [Doc. 110-1 at 1], and he is currently a partner at a "forensic accounting and business valuation firm specializing in complex financial matters in civil litigation and high-end divorce as well as business appraisal work for estate/gift/income taxes and management planning (e.g., buy/sell) purposes," [Doc. 110-2 at 1].  For over seven years, he has "work[ed] as a forensic accountant which involves analyzing business financial documents, conducting and testifying about numerous investigative accounting analyses, comparing financial statements to supporting documentation, and evaluating and identifying discrepancies, errors, omissions, and indicia of fraud."  [Doc. 122-1 at 1].

"Rule 702 does not impose an 'overly rigorous' requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training."  *Squires*, 829 F. Supp. 2d at 1048.  A court "should not exclude expert testimony simply because the court feels that the proffered witness is not the most qualified or does not have the specialization considered most appropriate by the court."  *Id.*  "It is the Court's role to make a preliminary determination of whether [the expert] has sufficient expertise to assist the jury; it is the jury's role to assess what weight to give [his] opinions."  *United States v. Channon*, No. 13-cr-00966-JCH-KK, 2015 WL 13651137, at *6 (D.N.M. Dec. 2, 2015). Here, the Court finds that Defendant has

established that Mr. Grosdidier is qualified to opine, based on his review of documents in this case, about Datavail's internal accounting systems or practices, whether Mr. Perlstein exercised control over those systems, whether a non-employee like Mr. Vergato generally had the ability to control directly those systems, and that he saw no evidence that Mr. Vergato did, in fact, directly access Datavail's internal accounting system during the relevant time frame.

### B.    Reliability

As for reliability, the Government contends that this opinion is unreliable because Mr. Grosdidier "cannot show that whatever criteria he used in assessing the documentary evidence and different factual accounts were based on reliable methods (or frankly, any methods at all)" because his "review of the documentary evidence in this case appears to be based on the defendant's own self-serving representations and cherry-picking of the government's discovery." [Doc. 110 at 7]. However, the Court's above concerns about an incomplete review of the evidence are not present with respect to *this* opinion, which does not purport to opine that there is "[n]o evidence" of any particular fact of consequence. For his part, Mr. Vergato argues that Mr. Grosdidier's opinions are reliable because "they are based on his training and experience in regularly reviewing voluminous financial statements and identifying documents and information in performing investigative accounting exercises, including fraud examination and business irregularities indicative of fraud." [Doc. 122 at 5].

As mentioned above, an expert who relies solely on his experience "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Medina-*

*Copete*, 757 F.3d at 1104.  Under Rule 702, "the proponent of expert testimony must show that the witness' experience, and resultant specialized knowledge, is sufficiently related to the issues and evidence."  *Vigil v. Burlington N. & Santa Fe Ry. Co.*, 521 F. Supp. 2d 1185, 1204 (D.N.M. 2007).

Here, Mr. Grosdidier does not explicitly explain why his experience is a sufficient basis for his opinion or how his experience is reliably applied to the facts of this case. *See* [Doc. 110-1; Doc. 122-1].  But the Court's gatekeeping function "is a flexible and commonsense undertaking in which the trial judge is granted 'broad latitude' in deciding both how to determine reliability as well as in the ultimate decision of whether the testimony is reliable."  *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243 (10th Cir. 2000). Upon review of Mr. Grosdidier's submissions, the Court finds that he has done enough to meet the threshold reliability requirement.  Mr. Grosdidier (1) explains his experience in conducting internal financial audits and forensic accountings, [Doc. 122-1 at 1]; (2) states that he has "been trained to assess, understand and identify documents and information in performing investigative accounting exercises, including fraud examination and business irregularities indicative of fraud," [*id.* at 2]; (3) represents that he regularly reviews "[i]nvoices, emails, purchase orders, statements of work, tax returns, bank statements, check images, accounting system reports" in conducting his financial analyses, [*id.*]; and (4) asserts that "[f]orensic investigative accountants regularly review voluminous financial statements along with supporting documentation, records and approval processes, for the purpose of formulating [their] opinions," [*id.*].  With respect to the opinion about Datavail's internal financial systems and Mr. Perlstein's purported

control over them, Mr. Grosdidier sufficiently explains how his review of certain documents led him to this conclusion. [Doc. 110-1 at 4–5; Doc. 122-1 at 1–2].

### C.   Rule 403

Finally, the Government argues that the opinion should be excluded under Rule 403 because "the probative value is substantially outweighed by the significant potential for unfair prejudice to the government; confusing and misleading the jury; and needlessly extending the trial." [Doc. 110 at 15]. But it does not explain why this specific opinion would be unfairly prejudicial, would confuse or mislead the jury, or would needlessly extend the trial. [*Id.*]. Defendant counters that "[p]art of [his] defense is the testimony of Mr. Grosdidier which will aid the jury in understanding the voluminous records the government has introduced as exhibits and how those records can be interpreted," such that "Mr. Grosdidier's testimony is extremely probative and is not outweighed by the danger of unfair prejudice to the government's case." [Doc. 122 at 10].

"The district court has considerable discretion in performing the Rule 403 balancing test." *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018) (quotation omitted). Relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, [or] needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence need not be "probatively essential" to survive a challenge under Rule 403. *United States v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011). "To the contrary, [the] law *favors* admission of all relevant evidence not otherwise proscribed; thus, exclusion under this rule is 'an extraordinary remedy [that] should be used sparingly.'" *Id.* (quoting *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999)).

Because the Court has concluded that Mr. Grosdidier is qualified to render this opinion and that the opinion is based on sufficiently reliable methods, and because the Government has not articulated a specific ground for exclusion under Rule 403, the Court finds that the probative value of this single opinion is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, or prolonging the trial. Accordingly, the Motion to Exclude is **DENIED** to the extent it seeks to exclude Mr. Grosdidier's opinion that "Datavail's ineffective, if any, internal controls allowed Mr. Perlstein full control over Datavail vendor/invoice approval, expense reimbursements, payroll," that a non-employee such as Mr. Vergato would have generally no ability to control those systems directly, and that Mr. Grosdidier found no evidence in his review of Datavail's internal accounting and financial system that Mr. Vergato had directly controlled them in the relevant timeframe.

### III.    Opinion about Arrow's Involvement With OPTO Services

Finally, Mr. Grosdidier opines that there is "[n]o evidence Arrow had any involvement in the OPTO services nor was charged any of its invoices." [Doc. 110-1 at 7]. Again, the Government challenges Mr. Grosdidier's qualifications to render this opinion, in addition to arguing that the opinion is unreliable and should be excluded under Rule 403. [Doc. 110 at 4–7, 13].

The Parties' arguments related to this opinion are identical to their arguments related to Mr. Grosdidier's opinion about Datavail's internal financial systems, *see supra* Section II, and the Court's analysis is largely the same as its analysis above. As for Mr. Grosdidier's qualifications, the Court finds that, based on his experience in internal financial auditing and financial accounting, Mr. Grosdidier is qualified to opine, based on

his review of the financial records, whether he believes the documentary evidence in this case shows that Arrow was involved "in the OPTO services [or] was charged any of its invoices." [Doc. 110-1 at 7]. Similarly, for the reasons discussed above, Defendant has met its burden to demonstrate the reliability of this opinion by a preponderance of the evidence, <u>with the caveat that Court will preclude Mr. Grosdidier from opining that there is "[n]o evidence" that Arrow was involved in OPTO services.</u> *See supra* Section I.A. And finally, as explained above, the Government does not identify any particular unfair prejudice it will suffer if this opinion comes in, and the Court cannot identify any, let alone conclude that the risk of that prejudice substantially outweighs the probative value of this evidence. Accordingly, the Motion to Exclude is **GRANTED in part** and **DENIED in part** with respect to this opinion.

## IV.    Issues Raised by Trial Briefs

The Government and Mr. Vergato filed Trial Briefs with the Court. [Doc. 126; Doc. 128]. After discussion with the Parties during the Trial Preparation Conference, the following issues remain:[7]

(1)    Arguments that Datavail and its employees should have completed more due diligence in evaluating OPTO's invoices and statements of work, and that Datavail should have uncovered the fraud and avoided any losses, [Doc. 128 at 2–3];

---

[7] Defendant does not object to the introduction of evidence regarding IP addresses. *See* [Doc. 128 at 7–8; Hearing Tr. at 26:25–27:2]. In addition, after clarification that the Government does not intend to offer the summary spreadsheet identified in Mr. Vergato's Trial Brief, *see* [Doc. 126 at 3; Doc. 128 at 8–9; Hearing Tr. at 26:14–24], Mr. Vergato's objection is deemed moot.

(2)    Reference to the terms "fraud," "fraudulent," "defraud," "conspiracy," or "co-conspirator" during "opening, during witness examinations or at any point during trial," [Doc. 126 at 2–4; Doc. 128 at 4–7]; and

(3)    Evidence related to the entire scheme to defraud, including but not limited to all 21 fraudulent OPTO statements of work and related invoices between January 2014 and June 2020, as well as OPTO's tax filings, [Doc. 128 at 7].

The Court considers each of these issues in turn.

*Topic 1.*  This Court concludes that although the Tenth Circuit has not passed on this issue, the weight of authority from other Courts of Appeals indicates that arguments that Datavail's conduct could or should have prevented any criminal conduct on the part of Mr. Perlstein, Mr. Vergato, or any unindicted co-conspirator are improper and will not be permitted.  *See, e.g.*, *United States v. Lindsey*, 850 F.3d 1009, 1014–15 (9th Cir. 2017) (collecting cases and noting that several circuits have held that a fraud victim's negligence is not a defense to criminal charges under the federal fraud statute); *see also United States v. Baver*, No. 2:21-cr-00520-JNP-CMR, 2023 WL 4138319, at *4 (D. Utah June 22, 2023) (*citing United States v. Frenkel*, 682 F. App'x 20, 22 (2d Cir. 2017)).  But consistent with the determination above, Mr. Vergato may elicit evidence and make arguments that Datavail's ineffective, if any, internal controls allowed Mr. Perlstein full control over Datavail's "vendor/invoice approval, expense reimbursements, payroll," that a non-employee such as Mr. Vergato would have generally no ability to control those systems directly, and that Mr. Grosdidier found no evidence in his review of Datavail's internal accounting and financial system that Mr. Vergato had directly controlled them in the relevant timeframe.  *See supra* Section II.

*Topic 2.* After consideration of the applicable case law regarding Rule 403 and arguments by counsel, this Court respectfully declines to issue a blanket prohibition on witnesses from using, and arguments to be made, using the terms "fraud," "fraudulent," "defraud," "conspiracy," or "co-conspirator"—or similar terms—during the trial. At this juncture, the Court does not find that these references are inflammatory per se. *See United States v. Folkers*, No. 04-cr-20124-KHV, 2008 WL 956833, at *1 (D. Kan. Apr. 4, 2008). Indeed, as recognized by defense counsel during the Trial Preparation Conference, the very elements of the indicted charges utilize those terms. Should the use of such terms raise particular concerns in the course of trial, each Party may object contemporaneously as necessary. *Id.* Finally, consistent with the ruling above, no witnesses—lay or expert—may opine as to the state of mind of another or testify as to the ultimate issue in this case of whether Mr. Vergato is not guilty or guilty. *See supra* Section I.

*Topic 3.* Finally, this Court will permit evidence to be offered—subject to other, appropriate admissibility objections—regarding the entire scheme to defraud, including but not limited to all 21 fraudulent OPTO statements of work and related invoices between January 2014 and June 2020, as well as OPTO's tax filings. The Parties stipulate that to convict Defendant of wire fraud, the Government must prove beyond a reasonable doubt, inter alia, that Defendant devised or intended to devise a scheme to defraud, as alleged in the Indictment, and that the scheme employed false or fraudulent pretenses, representations, or promises that were material. [Doc. 116 at 28–29 (citing 10th Cir. Pattern Crim. Jury Instr. § 2.57 (2025))]. In addition, the Parties stipulate that to convict Mr. Vergato of aiding and abetting wire fraud, the Government must prove beyond a

reasonable doubt that Mr. Vergato intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about, i.e., that Mr. Vergato consciously shared Mr. Perlstein's knowledge of the underlying criminal act and intended to help him.  [*Id.* at 30 (citing 10th Cir. Pattern Crim. Jury Instr. § 2.06 (2025))].

Defendant identified no legal authority either in his own Trial Brief, *see generally* [Doc. 126], or at the Trial Preparation Conference to limit evidence to the six indicted charges.  To the contrary, binding Tenth Circuit authority makes clear that a "scheme to defraud" has a wider meaning than an individual act of fraud.  "A scheme refers to the overall design to defraud one or many by means of a common plan or technique." *United States v. Massey*, 48 F.3d 1560, 1566 (10th Cir. 1995).  Other Courts of Appeals have recognized that this may include evidence of actions of and testimony by unindicted co-conspirators.  *See, e.g.*, *United States v. Lester*, 816 F. App'x 780, 793 (4th Cir. 2020) (discussing the testimony of unindicted co-conspirators).  And it may also include evidence of uncharged acts so long as the evidence is offered for a proper purpose, is relevant, and its probative value outweighs the potential for unfair prejudice under the Federal Rules of Evidence.  *See, e.g.*, *United States v. Kolodesh*, 787 F.3d 224, 236 (3d Cir. 2015) (citing *United States v. Ciavarella*, 716 F.3d 705, 728 (3d Cir. 2013)).  Here, the Government seeks to admit evidence of other acts in furtherance of the charged fraudulent scheme.  Such evidence may also be probative of a lack of mistake on the part of Mr. Vergato.  Fed. R. Evid. 404(b).

**CONCLUSION**

Accordingly, **IT IS ORDERED** that:

(1)    The Government's Motion to Exclude Expert Testimony [Doc. 110] is **GRANTED in part** and **DENIED in part**.

DATED:  May 16, 2025                    BY THE COURT:

Nina Y. Wang
United States District Judge