IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Criminal Action No. 23-cr-00302-NYW-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.    MICHAEL VERGATO,

    Defendant.

---

# ORDER

---

This matter is before the Court on Mr. Vergato's Renewed Motion for Judgment of Acquittal and Motion for a New Trial (the "Motion for Judgment of Acquittal" or "Motion for New Trial"). [Doc. 158]. The Government has responded in opposition to the Motion. [Doc. 173]. For the reasons set forth in this Order, the Motion is respectfully **DENIED**.

## BACKGROUND

On June 20, 2023, Defendant Michael Vergato ("Defendant" or "Mr. Vergato") was charged with six counts of wire fraud and aiding and abetting the same in violation of 18 U.S.C. §§ 1343 and 2. [Doc. 1]. His co-Defendant, Mark Perlstein ("Mr. Perlstein"), was charged with the same six counts. *See* [*id.*]. The Indictment alleges, in pertinent part:

> 1.    Between in or about January 2014 and in or about June 2020 defendants MARK PERLSTEIN and MICHAEL VERGATO devised and intended to devise a scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises.
>
> 2.    At times relevant to the scheme, MARK PERLSTEIN was the CEO and President of a company [named Datavail Corporation ("Datavail")], a database application, and analytics service provider.

3. At times relevant to the scheme, MICHAEL VERGATO was an employee and Vice President of a corporation [named Arrow Electronics, Inc. ("Arrow")]. [Arrow] was a Fortune 150 company which describes itself as a provider of electronic components and engineering support for computer systems and technology platforms. [Datavail] contractually provided services to [Arrow], and [Arrow] was one of [Datavail]'s largest sources of revenue.

4. MICHAEL VERGATO caused the creation of an entity named Oracle Performance Tuning and Optimization, LLC [("OPTO")], which was registered with the New York Secretary of State on or about November 15, 2013.

5. As a part of the scheme, between in or about January 2014 and in or about September 2019, OPTO sent invoices to [Datavail] for work purportedly performed by OPTO for [Datavail]. These invoices totaled over approximately 1.9 million dollars. Between on or about January 2014 and September 2019, [Datavail] paid OPTO over approximately $1.9 million dollars. OPTO had no clients or customers other than [Datavail].

6. As a part of the scheme, OPTO invoices sent to [Datavail] were sent directly to the [Datavail] corporate email address of MARK PERLSTEIN, rather than to an accounts receivable department at [Datavail]. The OPTO invoices were sent from an email account c_vicari@oracleperformancetuning.net and purportedly sent by a person identified herein as CV, who was identified in communications as the Director of Operations at OPTO. MARK PERLSTEIN caused [Datavail] to pay the invoices.

. . .

14. On or about the dates listed below, in the State and District of Colorado and elsewhere, MARK PERLSTEIN and MICHAEL VERGATO, directed and caused wire transfers to be received at an OPTO account at Suffolk Federal Credit Union (SFCU) which had been sent from [Datavail] and in so doing caused writings, signs and signals to be transmitted by means of wire communications to be sent in interstate commerce for the purpose of executing the aforesaid scheme and artifice to defraud as listed below:

| Count | Date | Amount |
|---|---|---|
| 1 | 09/19/2018 | $ 152,064.00 |
| 2 | 01/03/2019 | $60,000.00 |

2

| 3 | 02/19/2019 | $85,000.00 |
|---|---|---|
| 4 | 04/17/2019 | $60,000.00 |
| 5 | 05/21/2019 | $60,000.00 |
| 6 | 09/04/2019 | $147,551.00 |

[*Id.* at ¶¶ 1–6, 14].

Mr. Perlstein pleaded guilty to one count of wire fraud on January 27, 2025. [Doc. 79; Doc. 80 at 1]. Mr. Vergato was tried in May 2025. [Doc. 137]. On May 27, 2025, a jury found Mr. Vergato guilty on all six counts. [Doc. 154]. Mr. Vergato now moves for a judgment of acquittal or a new trial. *See* [Doc. 158].

## LEGAL STANDARDS

### I.   Rule 29

Rule 29 of the Federal Rules of Criminal Procedure states that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). "[T]he court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

In considering a motion for judgment of acquittal under Rule 29, the Court views the evidence "in the light most favorable to the government[] and without weighing conflicting evidence or considering the credibility of witnesses." *United States v. Fuller*, 751 F.3d 1150, 1153 (10th Cir. 2014) (quotation omitted). The Court's task is to decide whether the evidence, "if believed, would establish each element of the crime." *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001) (quotation omitted). The Court must

3

consider "the collective inferences to be drawn from the evidence as a whole" and does not examine the evidence in "bits and pieces." *United States v. Brooks*, 438 F.3d 1231, 1236 (10th Cir. 2006) (quotation omitted).  A court may enter a judgment of acquittal "only if the evidence that defendant committed the crime is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982).

II.     **Rule 33**

Under Rule 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  Unlike a motion under Rule 29, in considering a motion for new trial, the district court considers the credibility of witnesses, weighs the evidence, and does not view the evidence in the light most favorable to the Government.  *United States v. Brown*, 654 F. App'x 896, 908 (10th Cir. 2016).  "A motion for a new trial is not regarded with favor and is only issued with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269–70 (10th Cir. 2007).

**ANALYSIS**

Mr. Vergato's Motion raises two arguments.  First, he asserts that the Government improperly and unconstitutionally constructively amended the Indictment over the course of the trial because the Government "presented extensive evidence of an alleged scheme to defraud Arrow and Arrow's alleged losses and focused very little on Datavail, the actual alleged victim in the Indictment." [Doc. 158 at 3].  He contends that the jury convicted him on the basis not that he defrauded Datavail, but that he defrauded Arrow, which was "not the basis [of the offenses] Mr. Vergato was charged with and had notice of." [*Id.*].  Second, he argues that the Government failed to prove all of the elements of wire fraud;

4

specifically, he contends that the Government failed to prove his specific intent or the materiality of any alleged statements he made. [*Id.*].

I. **Constructive Amendment of the Indictment**

"It is a fundamental precept of federal constitutional law that a court cannot permit a defendant to be tried on charges that are not made in the indictment." *United States v. Williamson*, 53 F.3d 1500, 1512 (10th Cir. 1995) (cleaned up). "A fatal variance denies a defendant this fundamental guarantee because it destroys his right to be on notice of the charge brought in the indictment." *Hunter v. New Mexico*, 916 F.2d 595, 598 (10th Cir. 1990).

The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") recognizes two types of variances: simple variances and constructive amendments. *Williamson*, 53 F.3d at 1512–13. "At one end of the variance spectrum is a simple variance, which occurs when the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Koerber*, 10 F.4th 1083, 1115 (10th Cir. 2021) (quotation omitted). "This type of variance triggers a harmless-error analysis." *Id.* At the other end of the spectrum is the "more severe" alteration known as a constructive amendment of the indictment. *Id.* at 1115–16 (quotation omitted). This type of amendment occurs when the jury instructions and proof offered at trial broaden the indictment, *id.* at 1116, or "when the indictment alleges a violation of the law based on a specific set of facts, but the evidence and instructions then suggest that the jury may find the defendant guilty based on a different, even if related, set of facts," *United States v. Miller*, 891 F.3d 1220, 1234 (10th Cir. 2018). A constructive amendment creates a "substantial likelihood that the defendant may have been convicted

5

of an offense other than the one charged in the indictment." *Koerber*, 10 F.4th at 1116 (quotation omitted).  "The defendant bears the burden of proof both to show that a variance occurred and that it was fatal." *United States v. Sells*, 477 F.3d 1226, 1237 (10th Cir. 2007).

Here, Defendant argues that the Government constructively amended the Indictment by shifting the theory of the case from charging fraud on Datavail to proving fraud on Arrow.[1]  He argues that any scheme to defraud Datavail was not proven at trial, as the Government "presented little to no evidence that Datavail was defrauded." [Doc. 158 at 8–9].  Rather, in Defendant's view, the Government's case at trial focused on whether *Arrow* was defrauded through Statement of Work No. 11. [*Id.* at 8–9].[2]  In support, he asserts that the Government's closing argument at trial "focused solely on [an] alleged scheme to defraud Arrow" and Statement of Work No. 11, giving little attention to "any alleged scheme to defraud Datavail." [*Id.* at 9–11].  He also asserts that there were no jury instructions given "to absolve confusion about what the indicted scheme was" or to instruct the jury that Arrow should not be considered a victim. [*Id.* at 11–12].[3]  Mr. Vergato contends that "[t]his last-minute change occurred because the

---

[1] Mr. Vergato does not argue that a simple variance occurred.  *See generally* [Doc. 158].

[2] Statement of Work No. 11 is an agreement between OPTO and Datavail signed by Mr. Perlstein and, purportedly, Mr. Vergato's stepdaughter, which contemplated that OPTO would provide performance tuning services for Datavail.  *See* [Trial Ex. 74].  During closing arguments, the Government argued that Statement of Work No. 11 "remained in effect all this time like a Trojan horse in the background that allowed a funding mechanism for the fraud to occur, and it did just that for the next six years." [Doc. 166 at 26:5–8].

[3] Mr. Vergato argues that the jury "was given a confusing instruction to further compound the prejudice with respect to causation based on the government's selective interpretation of the Tenth Circuit's opinion in *United States v. Weiss*, 630 F.3d 1263, 1273 (10th Cir. 2010)." [Doc. 158 at 11].  At trial, Defendant objected to what became Instruction No. 19, which instructed the jury:

6

government realized that the evidence in its possession did not support a conviction for wire fraud with Datavail as the alleged victim" and that "[o]nce realized, the government then unfairly pivoted to give the jury some basis on which to" convict him.  [*Id.* at 9].

The Government disagrees that it constructively amended the Indictment, asserting that it adduced ample evidence of, and proved, Mr. Vergato's fraud on Datavail.  [Doc. 173 at 11–15].  Specifically, the Government asserts that it presented evidence that Datavail paid OPTO nearly $2 million as part of the fraud scheme, which included the six wire transmissions charged in the Indictment.  [*Id.* at 12–13].  It also relies on its closing argument, wherein it asserted that Mr. Vergato "worked with Mark Perlstein to steal nearly $2,000,000" and that "[t]he sole purpose of OPTO was to fraudulently obtain those funds from Datavail and then divide them among the parties who participated in the fraud."  [*Id.* at 13; Doc. 166 at 21:2–8].  It contends that it referenced Statement of Work No. 11 as "part of the 'background'" of the case and "as a 'funding mechanism for the fraud to occur,'" but maintains that the fraud charged and proved at trial was always the scheme to defraud Datavail.  [Doc. 173 at 13–14 (quoting [Doc. 158-1 at 26:3–13])].  It asserts that the added contextual background of Datavail's relationship with Arrow and Statement of Work No. 11 did not constructively amend the Indictment.  [*Id.* at 15].

---

To establish the element of causation, the Wire Fraud statute does not require the Government to prove Defendant had knowledge that the specific wire transmissions charged in the Indictment would follow in the ordinary course of business or that those transmissions were reasonably foreseeable.  Rather, it is enough if he set forces in motion which foreseeably would involve use of the wires.

[Doc. 149 at 22; Doc. 166 at 16:1–20:2].  However, Mr. Vergato does not expressly argue that a judgment of acquittal or a new trial is warranted based on the jury instructions, and he does not raise any sufficiency of the evidence argument with respect to causation.  *See generally* [Doc. 158].  Accordingly, the Court considers this argument only as a supporting portion of his constructive amendment argument.

The Court respectfully concludes that the evidence presented at trial corresponds with the conduct alleged in the Indictment. Here, Mr. Vergato was charged with both wire fraud and aiding and abetting wire fraud, and the Parties agree that the Indictment charged a scheme to defraud Datavail. *See* [Doc. 1]. At trial, the Government presented evidence that Mr. Vergato and Mr. Perlstein created a scheme to construct fraudulent statements of work to "earn or obtain dollars, cash that [they] weren't necessarily earning" and that the objective of the scheme was "[t]o enable a flow of cash and funds that [Mr. Vergato] and [Mr. Perlstein] would split outside of the normal delivery processes that would normally occur." [Doc. 165 at 81:6–10, 81:22–24, 87:20–88:14, 89:21–90:2, 108:22–109:7, 110:8–11]. To do so, they created OPTO for the purposes of creating an appearance that services were being performed for Datavail, with the knowledge that OPTO would not perform any legitimate work. [*Id.* at 82:15–22, 85:15–86:7, 114:5–21]. Datavail then paid OPTO pursuant to the fraudulent invoices and statements of work. [*Id.* at 93:18–94:17, 143:3–6, 176:7–177:6, 177:25–178:2, 185:1–13, 193:5–19]. The funds paid to OPTO were split between Mr. Vergato and Mr. Perlstein. [*Id.* at 94:13–17, 193:8–19]. In other words, the Government adduced evidence and argued at trial that Datavail was defrauded in that it paid nearly $2 million for services not actually rendered—which is the fraud scheme alleged in the Indictment.

Although the Government often referenced Arrow and Statement of Work No. 11 within its presentation of the evidence, the Court is not persuaded that this changed the Government's theory of the case or expanded the allegations in the Indictment. *See, e.g.*, [Doc. 166 at 77:19–20 ("Statement of Work 11 was a funding mechanism that allowed [the fraud on Datavail] to occur.")]. Providing additional background context to explain

the Government's theory of the case does not in itself impermissibly expand or amend the Indictment. The Government also made clear in closing arguments that its theory of the prosecution was that Datavail was defrauded, not Arrow. See [*id.* at 76:25–77:16 ("Defense counsel asks, why is Arrow nowhere mentioned, nowhere mentioned in this Indictment? Well, because the Indictment charges step one in the fraud scheme. Step one, as I mentioned, is that initial wire transfer from Datavail, without which nothing else can happen. . . . [W]hat is indicted is step one; that is the initial fraud between OPTO and Datavail invoicing for no work done, and that is done by the defendant.")]. The fact that Mr. Vergato and Mr. Perlstein may have ultimately also intended to defraud Arrow, and failed to accomplish that goal, does not change the analysis.

To the extent Defendant argues that the jury instructions contributed to or created a constructive amendment, the Court respectfully disagrees with this argument. Jury instructions "are of particular importance" in the constructive amendment analysis. *Miller*, 891 F.3d at 1232. The Court must be assured that "the jury convicted the defendant based solely on the conduct actually charged in the indictment." *Id.* (quotation omitted).

To start, Defendant did not request any amendments to the stipulated jury instructions or any additional instructions in light of the Government's presentation at trial. Defendant does not address how this affects the Court's analysis, if at all, in his Motion.[4] Moreover, the Court is not persuaded by the substance of Defendant's argument. Mr. Vergato argues that the jury instructions were confusing because they did not make clear

---

[4] The Tenth Circuit has recognized "some uncertainty as to whether a constructive amendment of an indictment by jury instructions to which the defendant did not object is reversible per se or reversible only where the amendment constitutes plain error and seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Brown*, 400 F.3d 1242, 1253 n.6 (10th Cir. 2005) (collecting cases).

9

"what the indicted scheme was." [Doc. 158 at 11].  But the instructions instructed the jury that, to find Defendant guilty, they must find that "Defendant devised or intended to devise a scheme to defraud, *as alleged in the Indictment*."  [Doc. 149 at 20 (emphasis added)].  And as Defendant himself argues strongly in his Motion, the Indictment charges a scheme to defraud Datavail.  *See* [Doc. 1 at ¶¶ 5–6; Doc. 158 at 5–6, 8 ("[T]he government charged Mr. Vergato with a scheme to defraud Datavail.")].  Courts assume that juries follow the instructions they receive, *United States v. Carnagie*, 533 F.3d 1231, 1243 (10th Cir. 2008), and the Court thus assumes that the jury limited its consideration to the scheme charged in the Indictment.  Therefore, the Court is assured that the jury convicted Mr. Vergato "based solely on the conduct actually charged in the indictment." *Miller*, 891 F.3d at 1232.

In sum, the Court concludes that Defendant has not met his burden of demonstrating that there was a constructive amendment of the Indictment.  Accordingly, there is no justification for a judgment of acquittal on this basis.  Moreover, because Defendant has not demonstrated a constructive amendment, the interests of justice do not require a new trial under Rule 33.

## II. Sufficiency of the Evidence

In the alternative, Mr. Vergato asserts that the Government did not prove at trial all of the essential elements of wire fraud.  [Doc. 158 at 12–13].  The Court construes this argument as a challenge to the sufficiency of the trial evidence.  *See* [*id.* at 13, 15 (arguing that "the Government did not sufficiently prove a specific intent to defraud as charged in the Indictment" and "the Government did not sufficiently prove materiality" (capitalization altered))].

10

At trial, the jury was instructed that, with respect to the wire fraud charges, the Government had the burden to prove beyond a reasonable doubt the following four elements:

*First*:   Defendant devised or intended to devise a scheme to defraud, as alleged in the Indictment;

*Second*:   Defendant acted with specific intent to defraud;

*Third*:   Defendant used or caused another person to use interstate or foreign wire communications for the purpose of carrying out the scheme; and

*Fourth*:   The scheme employed false or fraudulent pretenses, representations, or promises that were material.

[Doc. 149 at 20]; *United States v. Holloway*, 826 F.3d 1237, 1245–46 (10th Cir. 2016); *see also Neder v. United States*, 527 U.S. 1, 25 (1999) (materiality of falsehood is element of wire fraud statute).  With respect to the aiding and abetting charges, the jury was instructed that the Government must prove all of the above elements were committed by someone other than Mr. Vergato and that Mr. Vergato "intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about."  [Doc. 149 at 23].

Mr. Vergato argues that the Government failed to prove two elements beyond a reasonable doubt:  (1) a specific intent to defraud, as charged in the Indictment; and (2) materiality of his misrepresentations.  [Doc. 158 at 13–16].

### A.   Intent to Defraud

Mr. Vergato contends that the Government failed to prove that he or Mr. Perlstein had a specific intent to defraud Datavail.  [*Id.* at 13].  He argues that Mr. Perlstein specifically testified that there was no intent to defraud Datavail—only an intent to defraud

11

Arrow. [*Id.*]; *see also* [Doc. 158-2 at 74:8–23].[5] It follows, he contends, that no reasonable jury could have concluded that Mr. Vergato had any intent to defraud Datavail because there was no evidence presented at trial to support that intent. [Doc. 158 at 14].

In the Government's view, accepting Defendant's argument would require the Court to construe evidence in his favor, which is contrary to the Court's limited role in ruling on a Rule 29 motion. [Doc. 173 at 4]. The Government also asserts that Defendant's argument ignores the bulk of Mr. Perlstein's testimony "from which the jury could have (and did) reasonably determined that the defendant acted with an intent to defraud Datavail." [*Id.* at 5]. And finally, it asserts that it presented sufficient evidence of Mr. Vergato's intent to defraud Datavail aside from Mr. Perlstein's testimony. [*Id.* at 5–6].

**Rule 29.** As explained above, in ruling on Defendant's Motion for Judgment of Acquittal, the Court must view the evidence in the light most favorable to the government. *Fuller*, 751 F.3d at 1153. This means that the Court "necessarily resolve[s] any conflicts in the evidence in favor of the government and . . . assume[s] the trier of fact found that evidence credible." *Williamson*, 53 F.3d at 1516.

A jury is always free to believe all, some, or none of a witness's testimony. Construing the testimonial evidence highlighted by Mr. Vergato in the light most favorable to the Government, the jury could have simply disbelieved Mr. Perlstein's testimony that there was no intent to defraud Datavail. *See United States v. McCullough*, No. 04-cr-20006-01-02-JWL, 2005 WL 309944, at *3 (D. Kan. Feb. 7, 2005) ("easily reject[ing]"

---

[5] When citing to certain portions of the trial transcript for which the Parties did not order an official copy, the Court cites to a preliminary, non-public version of the trial transcript. Accordingly, there may be some variations with respect to page numbers, line numbers, and precise language, should an official transcript be ordered and produced.

argument based on witness's trial testimony because the jury was not obligated to believe the witness's testimony), *aff'd*, 457 F.3d 1150 (10th Cir. 2006). Moreover, as the Government points out in its brief, it presented other evidence from which the jury could conclude that Mr. Vergato had an intent to defraud Datavail—such as his use of his stepdaughter's name in the formation and operation of OPTO and his participation in the scheme of OPTO billing Datavail for services not actually performed. *See, e.g.*, [Doc. 158-2 at 85:2–15, 89:7–10, 131:25–133:9; Doc. 165 at 192:17–193:19]. The Court must "assume the trier of fact found [this] evidence credible" and resolve any conflict between this evidence and Mr. Perlstein's testimony in the Government's favor. *Williamson*, 53 F.3d at 1516.

Accepting Defendant's argument would require the Court to construe the evidence in his favor, which it cannot do in the Rule 29 context. *Fuller*, 751 F.3d at 1153. Accordingly, the Court finds no basis for a judgment of acquittal here.

***Rule 33.*** In the Rule 33 context, the Court does not weigh the evidence in the light most favorable to the Government and can consider the credibility of witnesses and weigh the evidence. *Brown*, 654 F. App'x at 908. First, as explained above, the jury is always free to disbelieve a witness's testimony. The jury could have simply found Mr. Perlstein to be incredible when he testified that there was no intent to defraud Datavail, based on other evidence presented at trial calling Mr. Perlstein's character for truthfulness into question (including, but not limited to, his admitted participation in the fraud). *See, e.g.*, [Doc. 165 at 81:5–24, 85:15–23]; *see also* [Doc. 166 at 76:20–21 (Defendant arguing at closing that "Mark Perlstein is a lying liar who lies.")].

Furthermore, "in a sufficiency challenge, the pertinent question is whether the evidence introduced at the trial resulting in the defendant's conviction is sufficient to allow a rational trier of fact to convict."  *Matthews v. Workman*, 577 F.3d 1175, 1185 (10th Cir. 2009).  Based on the evidence presented at trial, including Mr. Vergato's use of his stepdaughter's name in the formation and operation of OPTO; his participation in the scheme of OPTO billing Datavail for services not actually performed; and Mr. Vergato's insistence that his name not be associated with OPTO, even to his personal accountant, a reasonable jury could have found that Mr. Vergato intended to defraud Datavail.  Accordingly, a new trial is not warranted on this basis.

### B.     Materiality

Finally, Defendant contends that the Government failed to prove that he made any materially false statement, representation, or omission.  [Doc. 158 at 15].  According to Defendant, there was no evidence presented at trial that Mr. Vergato made any statement that caused Datavail to pay the OPTO invoices, such as testimony that "Datavail would not have paid the[] invoices . . . but for a material false statement or misrepresentation by Mr. Vergato."  [*Id.*].  Mr. Vergato also contends that none of the six transfers of funds charged in the Indictment were demanded by Mr. Vergato or associated with a statement of work created by Mr. Vergato; rather, they were either created by Mr. Perlstein "or no SOWs were submitted but payment was directed by Perlstein."  [*Id.* at 15–16].

The Government contends that it proved materiality beyond a reasonable doubt at trial.  [Doc. 173 at 6].  It asserts that (1) Defendant's use of his stepdaughter's identity as an OPTO representative constitutes a string of materially false statements that were capable of influencing Datavail's decision making; and (2) "the *amounts* that Datavail paid

14

to OPTO were calculated based on false statements contained in the fraudulent SOWs and invoices." [*Id.* at 7]. The Government also argues that Defendant's argument misstates the elements of wire fraud, asserting that the Government need not prove that Defendant himself made materially false statements that gave rise to the six wire transmissions charged in the Indictment. [*Id.* at 8]. According to the Government, all that is required is that the scheme employed materially false pretenses, representations, or promises. [*Id.*].

The Court respectfully disagrees with Defendant's arguments for a number of reasons. First, the Court disagrees with Defendant's characterization of the materiality element, which he suggests requires proof beyond a reasonable doubt that his own material misrepresentations or false statements did indeed induce Datavail to make the payments in question. [Doc. 158 at 15–16]. Pursuant to the Parties' stipulation, the jury was instructed that "[a] false statement is 'material' if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed." [Doc. 149 at 21]. The materiality inquiry is an objective one, turning not on "whether the misrepresentation actually influenced [a decision] or whether the decision maker actually relied on the misrepresentation," but whether the representation "had the capability" to influence the decision. *United States v. Williams*, 865 F.3d 1302, 1310 (10th Cir. 2017) (quotation and emphasis omitted);[6] *see also United States v. Lindsey*, 850 F.3d 1009, 1014 (9th Cir. 2017) (the government need not prove "actual reliance" on misrepresentations to satisfy the materiality requirement (quoting *Neder*, 527 U.S. at 25)).

---

[6] Although *Williams* involved charges of bank fraud, the Tenth Circuit has recognized that "[t]he bank fraud materiality analysis is identical to the materiality analysis required for convictions of . . . wire fraud." *Williams*, 865 F.3d at 1310 n.10.

Therefore, Defendant's argument that the Government was required to prove that he made materially false statements that *actually* induced Datavail to pay on the invoices is misplaced and does not warrant relief.

Moreover, to the extent that Mr. Vergato argues that *his* statements, omissions, or misrepresentations were not material, *see* [Doc. 158 at 15], the defendant need not have "personally . . . made the offending communications if he participated in devising the scheme to defraud in which use of interstate wires foreseeably would follow."  *United States v. Puckett*, 692 F.2d 663, 669 (10th Cir. 1982).  And furthermore, as the Government points out, Defendant was charged with wire fraud *and* aiding and abetting the same.  *See* [Doc. 1].  That is, Defendant could be found guilty on Counts 1 through 6 so long as the Government proved, beyond a reasonable doubt, that (1) every element of the wire fraud charge was committed by someone other than Defendant; and (2) "Defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about."  [Doc. 149 at 23]; *cf. United States v. Lawrence*, 449 F. App'x 713, 716 (10th Cir. 2011) ("In assessing the evidence it must be kept in mind that, given the alternative aiding and abetting theory on the wire fraud counts, it was not necessary for the government to prove [the defendant] posted the ads himself if ads he did not personally handle were posted by [his co-defendant] with his help or at his request in furtherance of the fraudulent scheme.").  The Court finds that, under either a Rule 29 or a Rule 33 standard, there was sufficient evidence to convict Mr. Vergato of aiding and abetting wire fraud, including evidence that Mr. Perlstein made material misrepresentations or false statements.[7]  *See,*

---

[7] To the extent Defendant argues there was no materiality because Datavail's Chief Financial Officer testified that knowledge of Mr. Vergato's involvement with OPTO would

*e.g.*, [Doc. 165 at 88:15–25, 133:21–134:6, 176:4–14; Trial Ex. 113]. Defendant does not address the aiding and abetting charges in his Motion or argue that there was insufficient evidence of materiality of Mr. Perlstein's misrepresentations. *See* [Doc. 158]. And finally, the Court agrees with the Government that a rational trier of fact could conclude, based on the evidence presented at trial, Mr. Vergato's misrepresentation of his identity by using his stepdaughter's name and an email address associated with her with respect to the fraudulent invoices and statements of work are misrepresentations that are capable of influencing Datavail's decision to pay the invoices. *Williams*, 865 F.3d at 1310; [Doc. 165 at 92:6–14].

For the reasons set forth in this Order, the Court does not find a basis to enter a judgment of acquittal under Rule 29 or order a new trial under Rule 33. Accordingly, the Motion for Judgment of Acquittal or New Trial is respectfully **DENIED**.

---

not have changed his decision to pay the invoices, *see* [Doc. 158 at 15], he also testified that seeing Mr. Vergato's name on statements of work from OPTO "would have been curious" and "would have been unusual" and that knowledge that Mr. Vergato was at all associated with OPTO would have been a "concern," *see* [Doc. 173-1 at 17:1–6, 35:22–36:1]. The Court must view the testimony in the light most favorable to the Government in the context of its Rule 29 ruling, *Fuller*, 751 F.3d at 1153, and even considering the weight of the evidence under Rule 33, the Court still finds that a rational trier of fact could conclude that Defendant's misrepresentations were capable of influencing the decision maker, *Williams*, 865 F.3d at 1310; [Doc. 165 at 92:6–14].

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)  Mr. Vergato's Renewed Motion for Judgment of Acquittal and Motion for a New Trial [Doc. 158] is **DENIED**.


DATED:  August 29, 2025                         BY THE COURT:

_____
Nina Y. Wang
United States District Judge